**DeNITTIS OSEFCHEN PRINCE, P.C.**
Ross H. Schmierer, Esq. (RS-7215)
525 Route 73 North, Suite 410
Marlton, New Jersey 08053
T.: (856) 797-9951
F.: (856) 797-9978
rschmierer@denittislaw.com

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANNMARIE LAYER,<br><br>              Plaintiff,<br><br>v.<br><br>AMERICAN HONDA FINANCE CORPORATION, d/b/a HONDA FINANCIAL SERVICES,<br><br>              Defendant. | Case No.:<br><br>**COMPLAINT AND JURY DEMAND** |

## INTRODUCTION

1. Plaintiff Annmarie Layer ("Plaintiff") brings this complaint and jury demand against the defendant American Honda Finance Corporation d/b/a Honda Financial Services ("Defendant") for damages, injunctive relief, equitable relief, and any other relief deemed just and proper arising from Defendant's patent violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.*, ("TCPA") and the Federal Communication Commission rules promulgated thereunder, 47 C.F.R. § 64.1200.

## THE TCPA

2. In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices.

1

3. The TCPA regulates and restricts, *inter alia*, the use of automated telephone equipment.

4. Specifically, the plain language of section 227(b)(1)(A)(iii) prohibits the using any automatic telephone dialing system to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party. *See* 47 U.S.C. § 227(b)(1)(A)(iii).

5. The plain language of section 227(b)(1)(A)(iii) also prohibits using an artificial voice to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party. *See* 47 U.S.C. § 227(b)(1)(A)(iii).

6. Lastly, the plain language of section 227(b)(1)(A)(iii) prohibits using any pre-recorded voice to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party. *See* 47 U.S.C. § 227(b)(1)(A)(iii).

7. The TCPA was designed to prevent calls like the ones described herein and to protect the privacy of citizens like Plaintiff. *See Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012)("Voluminous consumer complaints about abuses of telephone technology – for example, computerized calls dispatched to private homes – prompted Congress to pass the TCPA.")

8. In enacting the TCPA, Congress intended to give consumers a choice as to how corporate and similar entities may contact them, and made specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer." TCPA, Pub. L. No. 102–243, § 11.

9. In support of this, Congress found that:

> Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the

> call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

*Id.* at § 12; *see also Martin v. Leading Edge Recovery Solutions, LLC*, 2012 WL 3292838, at *4 (N.D. Ill. Aug. 10, 2012) (citing Congressional findings on TCPA's purpose).

10. Congress also specifically found that "the evidence presented to the Congress indicates that automated or prerecorded calls are a nuisance and an invasion of privacy, regardless of the type of call...." *Id.* at §§ 12-13.

11. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used. *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

12. On January 4, 2008, the FCC released a Declaratory Ruling wherein it confirmed that autodialed and/or prerecorded message calls to a wireless number by a creditor (or on behalf of a creditor) are permitted only if the calls are made with the "prior express consent" of the called party. *See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991* ("FCC Declaratory Ruling"), 23 F.C.C.R. 559, 23 FCC Rcd. 559, 43 Communications Reg. (P&F) 877, 2008 WL 65485 (F.C.C.) (2008).

13. The FCC "emphasize[d] that prior express consent is deemed to be granted only if the wireless number was provided by the consumer to the creditor, and that such number was

3

provided during the transaction that resulted in the debt owed." *FCC Declaratory Ruling*, 23 F.C.C.R. at 564-65 (¶ 10).

## **REVOKING CONSENT UNDER THE TCPA**

14. For several years, the issue of the scope and nature of "prior express consent" and whether a consumer could revoke such consent was unknown.

15. In fact, there was a significant split amongst many district courts regarding if and how prior express consent could be revoked.

16. In 2013, however, the Third Circuit Court of Appeals squarely addressed this issue when it was called upon to resolve: (1) whether the TCPA allows a consumer to revoke her "prior express consent" to be contacted via an automated telephone dialing system on her cellular phone; and (2) if a revocation right exists, whether there is a temporal limitation on that right. *Gager v. Dell Financial Services, LLC*, 727 F.3d 265 (3rd Cir. 2013).

17. There, the defendant, Dell Financial Services, LLC ("Dell"), argued that basic principles of contract law should preclude Ms. Gager from revoking her prior express consent because "a creditor will want to know in advance whether a credit applicant will consent to automated phone calls and that this knowledge is part of the 'consideration' that the applicant offers in support of her application." *Gager*, 727 F.3d at 273.

18. The Third Circuit Court of Appeals rejected this argument because "the ability to use an autodialing system to contact a debtor is plainly not an essential term to a credit agreement." *Id.* at 273-74.

19. The Third Circuit Court of Appeals further held that Dell's argument that its contractual relationship with Ms. Gager somehow waives her rights under the TCPA was incorrect.

20. The Court explained that "the fact that Gager entered into a contractual relationship with Dell did not exempt Dell from the TCPA's requirements." *Id.* at 274.

21. Rather, the Third Circuit Court of Appeals held that "she retained the right to revoke her prior express consent." *Id.*

22. In addition to these arguments, Dell contended "that it would be unfair to allow a consumer to revoke her prior express consent to be contacted on a cellular phone in the debt-collection context because the inability of a creditor to use an automated dialing system to call a borrower might make it 'difficult, if not impossible, [for the creditor] to ever contact the borrower with regard to the credit it extends.'" *Id.*

23. Once again, the Third Circuit Court of Appeals rejected this argument because it "overlook[ed] the fact that creditors are permitted to attempt live, person-to-person calls in order to collect a debt." Consequently, the Court held "Dell will still be able to telephone Gager about her delinquent account; the only limitation imposed by the TCPA is that Dell will not be able to use an automated dialing system to do so." *Id.*

24. In sum, the Third Circuit Court of Appeals in its decision that binds this Court expressly held that the TCPA allows consumers to revoke their prior express consent and there is no temporal limitation on when a consumer may revoke her prior express consent. In reaching this well-reasoned conclusion the Appellate Court found that allowing consumers to revoke their prior express consent is consistent with the basic common law principle that consent is revocable. Moreover, the Appellate Court opined that its "decision was in line with the remedial purpose of the TCPA that was passed to protect consumers from unwanted automated telephone calls." *Id.* at 269-74.

25. In addition to the *Gager* decision, the FCC issued its own Declaratory Ruling and

Order further clarifying whether consent could be revoked under the TCPA. *FCC Declaratory Ruling*, CG Docket No. 02-278, FCC 15-72, June 18, 2015.

26. In its Declaratory Ruling, the FCC rejected assertions that prior express consent cannot be revoked or that revocation can only be obtained in writing. *FCC Declaratory Ruling* at ¶ 55-70.

27. In rejecting these arguments, the FCC found that consumers have a right to revoke consent, using any reasonable method including orally or in writing. *FCC Declaratory Ruling* at 64.

28. The FCC explained that consumers may revoke consent in any manner that clearly expresses a desire not to receive further messages, and that callers may not infringe on that ability by designating an exclusive means to revoke. *FCC Declaratory Ruling* at 63.

29. In sum, the FCC found that the consumer may revoke his or her consent in any reasonable manner that clearly expresses his or her desire not to receive further calls, and that the consumer is not limited to using only a revocation method that the caller has established as one that it will accept. *Id.* at ¶ 70.

30. Lastly, on June 16, 2016, the Mortgage Bankers Association ("MBA") filed a Petition asking the FCC to exempt from the prior-express-consent requirement non-telemarketing residential mortgage servicing calls to wireless telephone numbers. *Mortgage Bankers Association Petition for Exemption*, CG Docket No. 02-278, (filed June 16, 2016).

31. On November 15, 2016, the FCC denied the MBA's Petition for Exemption. *Order*, CG Docket No. 02-278, DA 16-1277, (Released November 15, 2016).

32. As such, the Defendant herein does not benefit from any relevant exemptions to the strictures of the TCPA.

## JURISDICTION AND VENUE

33. This Court has federal question jurisdiction because this case arises out of violations of federal law.

34. This Court has personal jurisdiction over Defendant because Defendant conducts significant amounts of business within this District.

35. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to this case also occurred in this district.

## PARTIES

36. Plaintiff is, and at all times mentioned herein was, a citizen and resident of New Jersey. Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153 (39).

37. Defendant is, and at all times mentioned herein was, a foreign corporation duly organized under the laws of the State of California with its principal place of business in Torrance, California. Defendant is, and at all times mentioned herein was, a corporation and is a "person," as defined by 47 U.S.C. § 153 (39).

## FACTUAL ALLEGATIONS

38. On or about August 21, 2013, non-party Brian M. Layer ("Brian") entered into a retail installment contract ("Contract") for the purchase of a 2012 Honda Civic ("Car").

39. Under the Contract, Defendant was an assignee.

40. Although Brian was the "Buyer" of the Car thereby acknowledging certain rights and responsibilities under the Contract, Plaintiff was not a co-signer of the Contract.

41. In connection with the purchase of the Car, Plaintiff never provided Defendant with any type of prior express written consent to contact her.

7

42. At a certain time following the execution of the Contract, Brian's mother began receiving collection phone calls relating to the Contract from the Defendant that were frequent and annoying to her landline telephone number.

43. Thereafter, Defendant was advised that it should no longer contact Brian's mother.

44. Defendant was instructed to contact Plaintiff about any alleged deficiencies of monies owed under the Contract.

45. Because Plaintiff was not on the account, Defendant required permission from Brian to speak with Plaintiff.

46. Thereafter, Brian provided Defendant with permission to contact Plaintiff.

47. At no time, however, did Brian or Plaintiff provide oral consent to utilize an autodialer to contact Plaintiff.

48. Likewise, Brian and Plaintiff provide not provide Defendant with express written consent to utilize an autodialer to contact Plaintiff.

49. Nevertheless, Plaintiff began receiving collection phone calls relating to the Contract from the Defendant to her cellular telephone number 732-###-6390 ("Cellphone").

50. In response to these multiple annoying calls made to her Cellphone, the Plaintiff expressly and explicitly told Defendant's agent that it did not have permission to call her Cellphone.

51. Specifically, Plaintiff expressly communicated this revocation of any perceived consent to contact her Cellphone on August 3, 2018 at approximately 5:32 p.m.

52. Because Plaintiff expressly instructed Defendant's agent to stop calling her Cellphone, Plaintiff clearly revoked any consent that Defendant perceived it obtained or that

8

Plaintiff may have given to be called on her Cellphone with automated telephone equipment (the "Revocation").

53. Notwithstanding Plaintiff's clear Revocation, the Defendant nevertheless repeatedly made collection phone calls to her Cellphone utilizing automated telephone dialing equipment.

54. Continuing from August 3, 2018, Defendant incessantly and continually made illegal calls to Plaintiff flat out ignoring Plaintiff's Revocation.

55. On *multiple* occasions, Defendant, using automated telephone equipment, called Plaintiff's Cellphone and used a prerecorded voice without obtaining Plaintiff's prior express permission to do so.

56. On *multiple* occasions, Defendant, using automated telephone equipment, called Plaintiff's Cellphone, using an artificial voice without obtaining Plaintiff's prior express permission to do so.

57. On certain occasions, Plaintiff answered her Cellphone when these robocalls were received.

58. On such occasions, Plaintiff recognized the calls as using an automated telephone equipment because she heard a prerecorded voice.

59. Due to the continued and incessant multitude of harassing calls that were made in direct contravention to Plaintiff's Revocation, Plaintiff was forced to retain counsel to assist her in stopping these patent violations of the TCPA.

60. Specifically, on November 2, 2018, Plaintiff's counsel, Derek H. DePetrillo, Esq. sent a demand letter notifying Defendant of Plaintiff's intention to file suit for its various and gross violations of the TCPA.

61. In response to this letter, Defendant wrote to Attorney DePetrillo on November 16, 2018 and **acknowledged** that it had been contacting Plaintiff utilizing *automated telephone dialing equipment*.

62. Specifically, Defendant wrote: "[t]his letter is to inform you that the phone number you provided of [Cellphone] has been removed from **our auto dialer system**." (emphasis added).

63. Following receipt of this letter threatening a lawsuit, the Defendant finally ceased its illegal conduct.

64. Nevertheless, the Defendant called the Plaintiff dozens and dozens of times on her cellular telephone **after** Plaintiff clearly revoked consent.

65. The telephone number that Defendant, or its agents, called was assigned to a cellular telephone service for which Plaintiff incurs a charge for incoming calls pursuant to 47 U.S.C. § 227 (b)(1).

66. These telephone calls constituted calls that were not for emergency purposes as defined by 47 U.S.C. § 227 (b)(1)(A)(i).

67. Because the Plaintiff clearly revoked her consent, these telephone calls by Defendant, or its agents, violated 47 U.S.C. § 227(b)(1).

## COUNT I

### NEGLIGENT VIOLATIONS OF THE TCPA, 47 U.S.C. § 227, *et seq.*

68. Plaintiff incorporates by reference all of the above paragraphs of her Complaint as though fully stated herein.

69. The foregoing acts and omissions of Defendant constitute numerous and multiple negligent violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227, *et seq.*

70. As a result of Defendant's negligent violations of 47 U.S.C. § 227, *et seq.*, Plaintiff is entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

71. Plaintiff is also entitled to and seeks injunctive relief prohibiting such conduct in the future.

## COUNT II

### KNOWING AND/OR WILLFUL VIOLATIONS OF THE TCPA, 47 U.S.C. § 227, *et seq.*

72. Plaintiff incorporates by reference all of the above paragraphs of her Complaint as though fully stated herein.

73. The foregoing acts and omissions of Defendant constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227, *et seq.*

74. As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227, *et seq.*, Plaintiff is entitled to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

75. Plaintiff is also entitled to and seeks injunctive relief prohibiting such conduct in the future.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully prays for the following relief:

A. On the First Count, as a result of Defendant's negligent violations of 47 U.S.C. § 227(b)(2)(D), Plaintiff is entitled to and requests five hundred dollars ($500.00) in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B);

B. On the Second Count, as a result of Defendant's willful and/or knowing violations of 47 U.S.C. § 227(b)(2)(D), Plaintiff is entitled to and requests treble damages, as provided by statute, up to one thousand five hundred dollars ($1,500.00), for each and every violation pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C);

C. An Order, pursuant to 47 U.S.C. § 227(b)(3)(A), enjoining Defendant from violating 47 U.S.C. § 227(b)(2)(D);

D. Attorney's fees and costs; and

E. Such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by the Complaint.

Dated: June 11, 2019        **DeNITTIS OSEFCHEN PRINCE, P.C.**

                By:    *s/ Ross H. Schmierer*
                       Ross H. Schmierer, Esq.
                       Stephen P. DeNittis, Esq.
                       525 Route 73 North, Suite 410
                       Marlton, New Jersey 08053
                       (T): (856) 797-9951
                       rschmierer@denittislaw.com

## CERTIFICATION PURSUANT TO L. CIV. R. 11.2

I certify that, to the best of my knowledge, this matter is not the subject of any other action pending in any court or of any pending arbitration or administrative proceeding.

Dated: June 11, 2019 **DeNITTIS OSEFCHEN PRINCE, P.C.**

By: *s/ Ross H. Schmierer*
Ross H. Schmierer, Esq.
Stephen P. DeNittis, Esq.
525 Route 73 North, Suite 410
Marlton, New Jersey 08053
(T): (856) 797-9951
rschmierer@denittislaw.com

*Attorneys for Plaintiff*